at this time would counsel for the appellants Capen et al. please introduce themselves. Thank you, Judge. At this time, the case is number 24-1061, Joseph R. Capen et al. v. Andrea Joy Campbell. At this time, would counsel for the appellants Capen et al. please introduce themselves on the record to begin. Good afternoon. May it please the Court, my name is Barry Arrington. I'm appearing for the appellants today, and I would like to reserve one minute, please, for rebuttal. Okay, you may. Before you begin, let me just say a general comment after having read the briefs. I know something I always say I think everybody should address on the record is our President announced his state tactical. I know and I believe it's in one of the briefs. I believe it may be a reply. What you're doing is preserving all issues for further appellate review, but I think everybody should address that issue, and anything else you need to address, you'll have your 15 minutes, and this comment goes to both sides, and I just want to not take up your time. So, please go ahead. Your 14 minutes are starting to run out. Okay. So, today I would like to split my argument into two sections. The first section dealing with the handgun ban of the statute, and the second section dealing with the long gun ban in the statute. Now, it's interesting that the Court should mention Ocean State, because Ocean State is right there with us. If we follow Ocean State today, that part of the statute goes down that bans handguns. And what did Ocean State say? Ocean State basically just quoted Heller and said it is unconstitutional to ban handguns. Period. Full stop. End of story. Now, the Commonwealth admits that the challenge statute bans certain handguns, but it seems to argue, it's not exactly clear, but it seems to argue for an exception for handguns that it really doesn't like. Well, there is no such exception, and certainly it doesn't cite any authority for such an exception, and so Ocean State and Heller stand for the proposition that if nothing else, the part of the statute that bans handguns should have been enjoined by the District Court, and its failure to do so constitutes reversible error. Counsel, please tell me if I'm wrong, but when I had looked at the record below, I had understood you to really be focusing on the AR-15 before the District Court, and that's why the District Court's opinion focused on the AR-15. Is that wrong? Are you changing your focus on appeal? Can you address that? So, yes, we obviously raised the handgun issue in the District Court, and so it's preserved, and the District Court actually addressed the handgun issue in its opinion. It said, yes, the statute bans handguns, and it went on to quote Heller saying you can't ban handguns, for reasons that are not clear, it did not square the circle in its own opinion, but, yes, the issue is was it preserved? Yes, it was preserved. Was it emphasized? No, it was not emphasized. Did you, in any of the declarations and the expert reports that you submitted, again, I thought they all focused on the AR-15. Did any of them discuss specifically the common use issue, which is obviously very important to your arguments. Did any of those declarations or expert reports discuss handguns? No, Your Honor, I would submit that they didn't need to discuss handguns because the proposition that this Commonwealth lacks authority, that it's unconstitutional to ban handguns, is not a factual issue, it's a legal issue. You think it just flows from Heller? By Heller, yes. You're making a facial challenge. To the handgun issue, yes. So, the handgun, the part of this, the section of the handgun, the section of the statute that bans handguns is unconstitutional in every single application, and, therefore, it is a facial challenge to that part of the statute as appropriate. I have a question on standing. The National Association for Gun Rights is, could you tell me whether Mr. Capon is a member of the National Association for Gun Rights? Yes. Yes. And he's been so identified? I don't know if he was identified. I can't recall. It wasn't an issue. Nobody addressed that in the court below. But even if the National Association for Gun Rights doesn't have standing, Mr. Capon certainly does, and for purposes of this stage of the litigation, if one party has standing to address the issue, then it's not necessary for the court to resolve the standing issues with respect to other parties. Okay. So, turning to the long guns. Why doesn't Ocean State just mean end of story for the appellants in this case? Well, there are two reasons. The first reason is that the court in Ocean State implied strongly that firearms that are not fitted with large capacity magazines do not fall within its framework of analysis. How did it do that? First, the court said, semi-automatic firearms fitted with LCMs, which is an abbreviation for large capacity magazines, are highly effective crime weapons. I paraphrase. The cite on that is 95F4F46. And then it goes on to say, quote, LCMs minimize one of the few meaningful differences. That's a key phrase. Meaningful difference. LCMs minimize one of the few meaningful differences that do exist between M16s and semi-automatic weapons' rate of fire. And so, the pin site on that is 49. So, if it is a meaningful difference that a semi-automatic weapon is not equipped with an LCM, as Ocean State said, then it does not apply. In other words, by its own terms, Ocean State said, that semi-automatic weapons that are not equipped with LCMs are not within its framework of analysis. That they're meaningfully different from guns that may be banned. And that's why the first reason that Ocean State is not a showstopper for appellants. Second reason, there's been intervening Supreme Court authority. And, of course, I'm talking about Rahimi. Well, what does Rahimi have to do with this? Rahimi emphasized that the fact that the right to keep and bear arms has two aspects. The right to defend against private violence. Street crime, for example. And the right to defend against public violence. That's the sort of violence that's an issue in the Reconstruction South. Or in tyrannical governments. Lexington and Concord. Specifically, Rahimi said this. The pin site is 144 Supreme Court, 1987. It talked about Lexington and Concord. And the reason for the Second Amendment. It talked about why the 14th Amendment was ratified and incorporated the Second Amendment in the first place. To help the religiously free slaves against armed gangs in the South. Those are both aspects of the right to resistance. And the amendment said, disarm a community and you rob them of the means of defending life. That has to do with private violence. Take away their weapons of defense and you take away the inalienable right of defending liberty. The right to defend against public violence. And the Supreme Court is emphasizing there that there's two aspects of it. And we're going back to Heller, which traced the history of the Second Amendment to the pre-existing right of self-defense, of self-preservation and resistance. Now, Heller dealt with, in particular, private violence, self-preservation, because that was what was at issue with the case. But never said that that was the only part of the right. And the courts, in particular Ocean State, have simply ignored the application of this issue with respect to the right to resistance. And that's fundamentally inconsistent with the right, as explicated in Raheny just last July. And let's talk about why that's important. Courts, judges often ask me, what does a citizen need in the AR-15? Well, my personal view is under Heller that we don't have to answer that question with respect to arms in common use. That's an arrow that Ocean State took out of my quiver. And so I'm not going to emphasize that today. And so, I'm sorry, are you saying that we don't have to determine whether the AR-15 is a bearable arm? It certainly is a bearable arm. There's no question about that. Bruin said, and Heller said, that arms that are covered by the plain text is anything that is a weapon of offense or defense. And in Heller, the court said any firearm, it quoted an 18th century thesaurus that basically said that any firearm is an arm. And so under the plain text analysis, there's no question that a firearm is an arm. Otherwise, I would suggest it's not consistent with the plain text analysis. Counsel, the argument that you were just making before Judge Kasman's question, I think, was about what does self-defense mean, and it can be defense against private violence or public violence. And I understand your argument very well. The question I have for you is, you know, your opposing counsel has said that part of what's key to this case is understanding whether these arms are actually used for self-defense, even in the broader sense that you just argued, versus possessed for self-defense. So I want to ask you a specific question. Did you introduce any evidence below that these arms are actually used for self-defense, even in the broader sense that you just presented to us? And so the two answers to that question, we did not present any evidence below other than that they are commonly used for lawful purposes, which under Heller should be enough. But the court below focused only on whether they're used for private violence. Let me just follow up for a second. What evidence showed that they're commonly used for lawful purposes, rather than possessed? What was your use evidence? Well, the state's own expert says there's 24 million of these. And then the state's own expert said only a minuscule number of these are used in crime. And therefore, it really is the case that the issue before the court today is can the court, and I'm not making these numbers, I calculated these numbers up, can the state of Massachusetts ban 99.998% of these weapons because they're used for unlawful purposes by .002%? But lawful purposes is still different than defense. And I think the statistic that you just referred to, again, it's a possession statistic, so X amount have been bought by citizens for lawful purposes. I completely understand your argument on that. But if I can focus you on the use question, is there any evidence that you presented on use of these weapons for defense? And so the point that I've been trying to make is that requiring a citizen to demonstrate that these weapons have been used, these specific weapons have been used in actual self-defense situations undermines the entire point of the right because most weapons most of the time are not used. And so if that were the argument, there was no empirical analysis like that in Heller. It wasn't necessary. And this is especially true with respect to the right to defend against public violence. Is it really the case that we can't possess weapons in common use unless we demonstrate that those weapons have been used to resist tyranny, that those specific weapons have been used to resist armed mobs attacking minorities? That has never been the case. How do we know this? We know this from Miller. This is where Miller comes back in. Miller said that the right to keep and bear arms goes back to the militia. And the militia was, quote-unquote, sometimes civilian, sometimes military. And they brought arms in common use. These civilians brought arms in common use for their military service. Well, what kind of arms did they bring? They didn't bring pistols. They didn't bring handguns. They brought long guns. And so from the founders' perspective, if there is a hierarchy of protection of weapons, long guns are at the top of it. And what kind of weapons did they brought? They brought long guns in common use, the muskets at the time, that were used to overthrow Great Britain at the time of the Declaration of Independence. What's the modern-day analog to the long guns that the civilian militia members brought? What the civilian militia members brought to use for their military service? AR-15s, the most common long gun in the country today. What do you make of the argument that AR-15s are a danger to law enforcement? All weapons are a danger to law enforcement. The whole point of firearms is that they're dangerous. And I understand the commonwealth's argument that they had a public policy, a policy argument. Well, these arms are particularly dangerous in this area. Well, that's not something that can be on the table. That is interest balancing, just pure interest balancing. Counsel, I'm just going to ask you one other question to follow up on that. I understand very well your argument that this is not a policy debate and we can't interest balance. What we need to do is to see if there's historical regulation that is relevantly similar. But I think what the commonwealth is arguing is that there's a unique risk that didn't exist at the founding, which is the ability of someone with this kind of firearm to kill or hurt a large number of people, 10 or more in a matter of minutes. So whether or not there's a relevantly similar regulation, we have to look at that situation. So what I would appreciate you commenting on is was there any evidence that you introduced below that showed that there was this same risk at the founding or the time period that you think is relevant for the analysis that someone with a firearm could kill, you know, 10 or more people within a matter of minutes? Is that a risk that the founding citizens faced? Yes, absolutely it was. It was the risk that was identified in Heller. So it's case law, not declarations or expert reports that you submitted below that you're relying on. Well, in Heller, the city said that these weapons were used in mass shootings. Remember, the Virginia Tech shooting had just occurred down the road. And if that argument is available to them, Heller would have come out differently because it's the same violence and the same technology, advances in technology, that were at issue in Heller. And Heller said, we acknowledge what you're saying here because it was all over the city's briefs. We acknowledge that. So your position is Heller forecloses the argument. Heller forecloses this exact argument in no uncertain terms because it was raised in Heller and rejected. Thank you, counsel. Thank you, Your Honor. Let's hear now from counsel. Will you pronounce your last name? Don't want to misstate it. Yes, Your Honor, Grace Golke, appearing on behalf of the defendant at the lead, Attorney General Campbell. Your Honor, this court's decision earlier this year in Ocean State Tactical is dispositive of the half of the case related to large capacity magazines, also called LCMs. And it is strongly on point as the other half regarding assault weapons. This court in Ocean State applied the inquiry laid out by the Supreme Court in Bruin. And this court concluded, quote, our analogical reasoning very likely places LCMs well within the realm of devices that have historically been prohibited once their danger became manifest. That's from page 50 of Ocean State. And the same is true of the assault weapons that are also restricted by Massachusetts law. In Ocean State, this court rejected the proposed popularity test that forms essentially the sum total of plaintiff's argument here. And plaintiffs have not articulated how this court could find in their favor consistent with Ocean State. And I can address the specific points raised in opposing counsel. So let me say that for the Commonwealth's perspective, we should affirm if the plaintiff's appellants have an issue, then they need to go and bonk or go to the Supreme Court. But we must follow our president. That's your position, I understand, right? That's correct, Your Honor. Ocean State, we would say, really does mandate affirmance here. Both on the LCMs and the restrictions on the firearms. Isn't there a footnote in the case that says very clearly we're not deciding the constitutionality of the restriction on the firearms? Yes, Your Honor. And I would say the analysis is slightly different in that the LCMs, that's literally mandated by the decision. As to assault weapons, the court would look at its analysis in Ocean State as it applies to LCMs and then apply it to assault weapons as well, which we've laid out in our brief why there is each statement that was made about LCMs. The record here supports that those same statements can be made about assault weapons. Can I ask a question? I'm sorry. Absolutely. About the AR-15, which the district court stated was treating as a proxy for the whole. And so the analysis is focused on AR-15s, as it was actually in the Fourth Circuit Bianchi case. Isn't that only one type of indefinite number of specific weapons that fall under the statute's definitional provisions? Yes, Your Honor. That's correct. However, especially after Rahimi, because the plaintiffs do make a facial challenge to the entire statute, if the Commonwealth can prove that AR-15s may be banned, then the facial challenge fails. That's essentially what Rahimi said as to the statute it was looking at, that so long as there is one application that is constitutionally permissible, then a facial attack fails. And I think although both Ocean State and the district court's opinion here predated Rahimi, so it didn't have that sort of framing, I think it fits quite neatly here, where AR-15s have been the focus of both parties' briefing. And if this court were to determine that AR-15s as sort of a representative weapon, if it's constitutionally permissible for the Commonwealth to ban their possession as it has done, then the facial attack necessarily fails. If the plaintiffs have particular weapons they do not think should appropriately fall within the analysis of Ocean State, that's for them to bring an as-applied challenge. Did they seek any sort of alternative relief below, or is the only relief that they sought facial relief? Your Honor, they only sought to enjoin the statutes writ large. There was no attempt to seek to enjoin the statutes as to them in particular, or to enjoin the statute as to only certain applications or certain weapons. It was just an entire facial challenge and an entire, at the preliminary injunction phase, it was seeking to enjoin the entire law. And I think that does address as well the points raised in opposing counsel's argument about handguns and how they relate to this analysis. So there was no discussion of handguns below before the district court, and for that reason alone I don't think it's appropriately here before this court. Let me ask counsel, if it's not appropriately before this court, but counsel for the plaintiff's appellants raised the issue, isn't this a matter that we should remand for that specific issue then? It's not properly before the court. Well, Your Honor, because we're at the preliminary injunction stage, I think what this court more appropriately should do rather than remand for further development on the PI, it should affirm the denial of the preliminary injunction, on which the plaintiffs did not rely on any evidence related to handguns, and if plaintiffs want to develop further evidence in the course of further litigation, they are of course free to do so. And it would not, in theory, preclude them from asking for a preliminary injunction for the handguns, correct? I suppose it would not, although it could depend on how this court addresses the challenge before it now. I do think that preliminary relief... But let's assume we say, and again this is just a hypothetical, let's assume the LCMs, we say Ocean State Tactical is on point, the denial of the PI is affirmed, the other matter was not, let's assume it's not properly before us, it was not discussed below, so we affirm the decision. But would that allow the judge below, I guess it's judge, I forgot the judge, but it would allow the judge to continue with it, correct? The case gets gone black. That might happen.  Just continue on. The case will continue below. So because this is only a denial of a preliminary injunction, the case will continue below, and if there are other issues that have not been surfaced in the PI proceedings, they could be addressed. I do think because plaintiffs have brought, there's sort of another issue with the handgun, with trying to use the inclusion of a very small, very prescribed number of handguns, trying to use that to take down the whole law. I think Rahimi's statements about how facial challenges work in the Second Amendment preclude that effort. So what I understand plaintiffs to be seeking to do is to say because there is one or more handguns that are addressed by this law, that means the entire law falls. I don't think Heller said anything that suggests that is accurate, and Rahimi's statements about the facial challenges I think further confirms that. I would just point the court to a couple of places in the record, Appendix 132 and Appendix 1550 to 1552, that talk about the assault pistols that are banned by this law. It is not a ban on all handguns by any means, nor is it even a ban on all semi-automatic handguns by any means. It is a very narrowly described set of assault pistols that are the semi-automatic version of submachine guns. The Supreme Court in Heller looked at Tommy guns, commonly called Tommy guns, Thompson submachine guns. Those seem to be within the realm of what everyone agrees can be banned. I think we have essentially a parallel analysis of our argument is that the assault rifles that are addressed by this law should be treated similarly to M16s or fully automatic rifles in the same way that the assault pistols should be treated similarly to submachine guns. The analysis is not as different as I think plaintiffs are portraying here, but I do think all of that is better addressed when it's raised at the district court with appropriate record evidence and appropriate briefing. Counsel, all of these decisions, Judge Saylor's decisions were before Rahimi, of course, and your opposing counsel has said that he thinks the decision in Rahimi actually supports his arguments. Can you address both what opposing counsel said and also if you think Rahimi should change our analysis in any way? Because to the extent Rahimi contradicts what we said in our own decision, then of course we have to follow Rahimi. Yes, Your Honor, I think Rahimi only strengthens the Commonwealth's case here and reaffirms that Ocean State did come to the correct conclusion, and there's a few reasons. What Rahimi affirmed was that, and this is a quote from page 1897, derived from English practice and codified in the Second Amendment, the right secures for Americans a means of self-defense. So it really does reiterate the centrality of self-defense to this analysis, which Ocean State affirmed as well, and its analysis followed from that central premise that self-defense is the core of this right. But I think your opposing counsel is saying you're defining self-defense too narrowly and that there are different types of situations in which one may have to defend oneself, and you have in your evidence below really focused on, well, this arm is not appropriate for your private violence, and opposing counsel is saying, but what about public violence? And let me add to Judge Rickleman's comment. Can't the LCM be used for self-defense? I'm going to be mauled or attacked. I can use it the same way I can use a gun or any other legal firearm. Isn't that correct? Well, Your Honor, this court in Ocean State said that what the court looks to is actual use in self-defense, and it found no evidence that LCMs were actually used in self-defense, and that is the same record we have here as to assault weapons. What about the argument that Heller doesn't require a showing of use, actual use? Well, I don't think Heller ever said that. It does use the word use many times, and what Heller said was that everyone agrees handguns are in actual use for self-defense. It didn't use those words. I shouldn't. That's not a quote. But Heller said that essentially everyone already knows handguns are the quintessential self-defense weapon, and so there wasn't a need to build any record in that particular case. We very much do dispute that these weapons are used in self-defense. Where does stated purpose come into this? So plaintiffs argue that millions of Americans' stated purpose for owning a semi-automatic assault weapon is for self-defense. Is there any room to consider stated purpose in our analysis? Your Honor, I have a few responses to that. First, I think Ocean State did say actual use, so that's what this court has said. Nothing in Rahimi suggests that that was incorrect. But even taking the evidence that plaintiffs have put in, in order to show stated purpose, it's a single survey that was published online, and our rebuttal expert report from Luis Claravis talks about some of the deficiencies in that survey, so there really is no credible evidence in the record at this point that those numbers are even valid. But again, Ocean State did not use that as the standard, and so that, I think, is binding on this court until there is other precedent, which there has not been. And it also is how other circuits, the Fourth Circuit in Bianchi, the Seventh Circuit in Bevis, those have both looked as well at both suitability of design for self-defense and then actual use. I think those two things can complement each other, but neither of them accepted that simply owning an item with an abstract belief that it may someday serve a self-defense purpose, that was not enough to be sort of an objective legal test that courts can apply across different types of individual weapons, that are within this historical tradition that Ocean State has identified as being weapons that can be prohibited because they are unusually dangerous in relation to their utility for self-defense. I want to respond very briefly just to the statement made about the meaningful difference between the assault weapons and fully automatic weapons. The Supreme Court's recent decision in Cargill, I think, provides a really interesting perspective on that. That was obviously a statutory interpretation case. But what it stated was that, in fact, the—and I'm just going to find the quote— that a shooter manually bump-firing a semi-automatic rifle can achieve continuous fire through just a manual use of hands. So I think that that difference between fully automatic fire and semi-automatic fire, again, that the record in this case does support that that difference really is not meaningful, and that's only been confirmed by the Supreme Court more recently. Counsel, can I just ask you to go back to the unusually dangerous test or category, because that seems so critical to the case? Do you see that—and I think the case law is really not entirely clear. Is that a step one analysis or a step two analysis? Your Honor— Because just looking at, you know, what the Supreme Court has said very clearly, which is you look at the plain text, if the plain text covers the conduct, you move to step two. So to me, it seems like this should be part of the step two analysis, but you seem to be treating it as part of step one, and I'm just wondering if you can explain more clearly why. Yes, Your Honor. So this court, in Ocean State, by sort of skipping over step one, obviously its discussion of dangerous and unusual only was in step two. And so if that is the way the court approaches it again, I think assault weapons still do fall within that same tradition. The reason that we have stated it's more appropriately put into step one, where plaintiffs bear the burden, is that Heller especially, and then Bruin as well, spoke about the scope of the words in the Second Amendment being informed by the codification of a preexisting right. And so it's not to say that history is, so it sort of baked in certain historical elements of those words. And so what it appears from the way that Heller and then Bruin split the discussion of sort of what is within the textual analysis, what is within the historical analysis, it baked in certain qualities into that step one analysis and said keeping and bearing arms refers to doing so for self-defense. And the Second Amendment protects arms that are in common use for self-defense. So that's why we see it as more appropriately in step one, because in the way that the Supreme Court has done that analysis, it has discussed common use when looking at the text. However, I think it is not entirely clear, just because this particular issue has not been squarely presented, and so because this court in Ocean State looked at that historical tradition within step two, we think that provides grounds to affirm here. Do you think Ocean State keeps open step one analysis? Certainly, Your Honor. Ocean State said it was assuming without deciding that the LCMs were arms at step one. It did not make any findings or analysis at step one, so certainly it hasn't decided what goes into that step and found that even if we get to step two, the test is satisfied. Thank you. Any further questions from my colleagues? Okay, thank you, Counsel. Thank you, Your Honors. Mr. Arrington, you have one minute rebuttal before your one minute starts. Let me just ask a question. I think it's just a yes or no answer, but for the appellate record, just to have this clear, I understand and I'm almost certain that the individuals you represent, as well as individuals who would be members of the association or if any of them wanted to intervene and join on your behalf, you're talking about what you said, 99.99, I don't know how much percent. These are all lawful legal licensed owners or purported prospective owners or current owners of LCMs and the firearms, correct? Yes. Okay, so use your minute now. I think I understood the court's question. So the undisputed evidence is about 24 million of these and very, very few, like a couple hundred were killed with rifles by all types. If you had 24 million rifles and a couple hundred people homicides, that's 99.998 not used to commit homicides is the point that I was making. Okay, that was one of the lessons. So let's give you back the one minute for rebuttal and you can start now.  So the question under Bruin that you need to ask yourself, does anyone here on the panel have expertise about whether AR-15s are suitable, quote unquote, suitable for self-defense? It's not within your kin, I would suspect. And that is the whole point of Bruin, that judges need to get out of the business of making what they called difficult empirical decisions about these policy issues. And the suitability analysis is simply, at the end of the day, a policy analysis. It's backdoor interest balancing, clear and simple. As to the facial challenge, I would ask the court to consider Antonyuk recently from the Second Circuit. When there's a facial challenge to a multi-section statute, each of them can be analyzed separately. Okay, thank you, counsel. Safe travel. I understand you're going back to Colorado. Safe travel. And to opposing counsel, I know you're probably not driving too far. Good afternoon. Court is adjourned. Thank you.